UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOHN A. HAWKINSON,
        Plaintiff,


        v.                                    CIVIL ACTION NO. 21-11817-MPK[1]


EXECUTIVE OFFICE FOR
IMMIGRATION REVIEW,
        Defendant.


MEMORANDUM AND ORDER
ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (#24).


KELLEY, U.S.M.J.

I. Introduction.

Pro se plaintiff John A. Hawkinson filed a complaint against defendant Executive Office

for Immigration Review ("EOIR"), a component of the U.S. Department of Justice ("DOJ"),

alleging that EOIR failed to produce public records pursuant to the Freedom of Information Act

("FOIA"), 5 U.S.C. § 552, in response to his October 1, 2021 FOIA request. (#1 ¶¶ 1, 35.) In that

request, plaintiff sought all Board of Immigration Appeals ("BIA") decisions contained in its "data

library of 'shared network folders' that . . . date from December 1, 2019 through present; . . .

originate from the Boston, MA or Hartford, CT immigration courts; and contain the text

'alternatives to detention' or 'alternatives-to-detention.'" (#1-3 at 4; #1 ¶¶ 2, 5.) Plaintiff contends

that EOIR failed to make reasonable efforts to complete his FOIA Request. (#1 ¶¶ 34, 35.) EOIR

has moved for summary judgment, arguing that its response to plaintiff's request was made in

---

[1] With the parties' consent, this case was assigned to the undersigned for all purposes, including
trial and the entry of judgment, pursuant to 28 U.S.C. § 636(c). (#16.)

good faith because it was reasonably calculated to discover the requested documents. (##24, 38.) Plaintiff opposes. (##29, 39.) For the reasons set out below, defendant's motion for summary judgment (#24) is ALLOWED.

II. <u>Background</u>.

A.  <u>Procedural Background</u>.

Plaintiff filed this action less than two months after the court granted EOIR's motion for summary judgment in *Hawkinson v. Executive Office for Immigration Review* (*Hawkinson I*), No. 20-cv-12273-MPK, 2021 WL 4419856 (D. Mass. Sept. 27, 2021). In that case, plaintiff alleged that EOIR failed to make reasonable efforts in searching for records pursuant to an earlier, related request, FOIA Request 2021-02706. *Id.* Plaintiff's previous complaint alleged that on or about October 30, 2020, he made a FOIA request seeking "all [BIA] decisions that: date from December 1, 2019 through present; and originate from the Boston, MA or Hartford, CT immigraton [sic] courts; and contain the text 'alternatives to detention' or 'alternatives-to-detention.'" *Id.* at *1-2. In that earlier request, plaintiff did not direct EOIR to search BIA's "data library of shared network folders." *See id.* at *2. Although plaintiff said he was aware of three decisions that should have been produced in response to his request, on November 16, 2020, EOIR produced only two decisions it had located after searching the BIA Decisions Search Application database.[2] *Id.* at *3.

In response to plaintiff's administrative appeal, on December 15, 2020, the DOJ's Office of Information Policy ("OIP") concluded "that EOIR's response was correct and that it conducted an adequate, reasonable search for responsive records subject to the FOIA." *Hawkinson I*, 2021 WL 4419856, at *1. Plaintiff then filed *Hawkinson I*; EOIR moved for summary judgment and

---

[2] When *Hawkinson I* was decided, the database was named "BIA Decisions Portal." (#26 ¶ 12 & n.7.) EOIR notes that the database is now named the "BIA Decisions Search Application." (#25 at 7-8; #33-1 ¶ 12.)

plaintiff filed a cross motion for summary judgment. *Id.* Plaintiff argued that defendant did not meet its burden of making a good faith effort to search for the requested records because it only searched the BIA Decisions Search Application, not the BIA's internal shared drive. *Id.* at *3. Plaintiff also argued that the search was inadequate because problematic optical character recognition ("OCR") procedures limited searchability and because EOIR was unable to explain why its search did not produce the missing document.[3] *Id.* at *4. EOIR's position was that, even if there was a missing document, its search was adequate under First Circuit precedent requiring a good faith search in a location reasonably calculated to contain the responsive documents. *Id.* at *4-5.

The court allowed EOIR's motion and denied plaintiff's cross-motion, finding that because the BIA internal shared drive stores drafts, not final decisions, EOIR did not act in bad faith by not searching it for materials responsive to plaintiff's request. *Hawkinson I*, 2021 WL 4419856, at *5. In response to plaintiff's contentions regarding defendant's OCR procedures, the court found that "FOIA contains no requirement that the government maintain its files in a particular way so as to facilitate a search." *Id.* at *4 (quoting *Oleskey ex rel. Boumediene v. U.S. Dep't of Def.*, 658 F. Supp. 2d 294, 297 (D. Mass. 2009)). Furthermore, the court determined that based on precedent from both the First and D.C. Circuits, EOIR's failure to identify one document did not automatically make its search inadequate. *Id.* at *5. Plaintiff appealed the order. *Hawkinson v. Executive Office for Immigration Review*, No. 21-1975 (1st Cir.).  On July 19, 2023, the First Circuit affirmed, "essentially for the reasons stated in the district court's September 27, 2021 Memorandum and Order." *Id.*

---

[3] "[F]iles . . . without optical character recognition [are] digitally unsearchable." *United States v. Tsarnaev*, No. 13-cr-10200-GAO, 2018 WL 6381457, at *3 (D. Mass. Dec. 6, 2018).

B. <u>Factual Background.</u>

The facts presented are undisputed unless otherwise noted.[4] When assessing a motion for summary judgment in the FOIA context, "[t]he [c]ourt 'is obliged to []view the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor.'" *Am. C.L. Union of Mass. Inc. v. U.S. Immigr. and Customs Enf't*, 448 F. Supp. 3d 27, 36 (D. Mass. 2020) (quoting *Leblanc v. Great Am. Ins. Co.*, 6 F.3d 836, 841 (1st Cir. 1993)).

When a FOIA request is transmitted to EOIR, it is designated as either a "Simple" or "Complex" request. (#26 ¶ 1.) Complex requests "generally require collection of records from one or more program offices (including field offices), involve a search for numerous records necessitating a wide-ranging search, and/or involve processing of voluminous records." *Id.* Between 2015 and 2020, EOIR processed between 12 and 413 Complex requests per year. *Id.* ¶ 2. When a Complex request is submitted, EOIR FOIA Unit attorneys and staff ("FOIA Unit") identify which EOIR program offices are "reasonably likely to possess records responsive to that request." *Id.* ¶ 7.

On average, the BIA decides more than 30,000 cases per year, and in 2020 it decided more than 40,000 cases. (#33-1 ¶ 5.) Untargeted requests, like plaintiff's, seek "BIA Decisions based on a particular immigration judge, a particular immigration court, a date range, and/or key term without identifying a particular Respondent by name or A-number." (#26 ¶ 16.) When an untargeted request is made, the FOIA Unit may conduct the search itself without involving a point of contact at a program office because it has access to certain internal agency databases. *Id.* ¶¶ 10,

---

[4] The Court draws the facts from defendant's Local Rule 56.1 Statement of Material Facts and supporting declaration (##26, 26-1); plaintiff's response to those facts contained in his opposition to summary judgment and supporting declaration (##29, 29-1); the supplemental declaration of Bradford Jelinski, Senior Systems Engineer at the EOIR's Office of Information Technology (#33-1); and plaintiff's declaration in support of his sur-reply (#39-1).

16. Two such databases contain copies of BIA unpublished and published decisions. *Id.* ¶ 10. One is "BIA eDecisions," which stores unpublished BIA decisions from 2001 to present. *Id.* ¶ 11. BIA eDecisions is searchable by "Date Range, A-Number (alien registration number), Fine Number, Appeal Type, IJ Name (Immigration Judge Name), and Base City (Immigration Court location)." *Id.* The other BIA database to which the FOIA Unit has access is the BIA Decisions Search Application, which stores unpublished BIA decisions from 1989 to present. *Id.* ¶ 12. Decisions in BIA eDecisions cannot be searched by keyword because the stored files are not subject to OCR, whereas decisions in the BIA Decisions Search Application are processed through OCR and are thus searchable by keyword. *Id.* ¶¶ 11, 12.

BIA uses the Microsoft Windows operating system. (#26 ¶ 13.)  File Explorer, a feature of Microsoft Windows, allows multiple users to store and access files using shared drives.[5] *Id.*; #29 at 6; #33-1 ¶ 3. When EOIR's Office of Information Technology ("OIT") creates a shared drive, it gives access privileges to specified users. (#26 ¶ 13; #33-1 ¶ 3.) "Only the [s]hared [d]rives to which a user has access privileges can be displayed to the user when the File Explorer application is launched." (#33-1 ¶ 3.) Those with access to a shared drive are responsible for creating and organizing the files and folders within it. *Id.* ¶¶ 3, 6. The FOIA Unit does not have access privileges to the BIA's shared drive ("BIA Shared Drive"),[6] which contains approximately 3.4 million files. (#26 ¶ 14; #33-1 ¶ 6.)

According to defendant, BIA staff stored draft decisions in the BIA Shared Drive until August 9, 2021. (#26 ¶ 14.) Defendant maintains that draft decisions are not finalized until they

---

[5] Plaintiff states that File Explorer is not the only way to access files stored on a shared drive. (#39-1 at 2.)

[6] Note that the terms "data library," "shared network folder," "network drive," and "G:\ Drive" all refer to the BIA Shared Drive. (#26 ¶ 14 & n.8; #33-1 ¶ 3.)

are printed from the BIA Shared Drive, signed by a board member, scanned, and uploaded to the BIA Decisions Search Application. *Id.* Plaintiff agrees that some of the drafts stored on the BIA's Shared Drive are pre-decisional (and thus protected from disclosure through a FOIA request), but he argues that others are "last drafts" that are not pre-decisional. (#29 at 6-7.)

There is significant dispute between the parties as to the searchability of the BIA Shared Drive. As currently structured, it is indexed by file properties (e.g., file name) only, not by file contents. (#33-1 ¶ 8.) This is intentional, as indexing by file contents "would have a dramatic and profound negative impact on the performance of the local computer, the [BIA] [S]hared [D]rive, the [Common Internet File System ("CIFS")] server, and the EOIR Network." *Id.* With these settings in place, keyword searching for terms within a document is not possible. *Id.* Defendant states that, as a result of these settings, finding a document containing a given keyword in the BIA Shared Drive would require a BIA employee to open and review each individual file in the drive. *Id.* ¶ 5.

Plaintiff disputes the necessity of a manual search, arguing that defendant could search the BIA Shared Drive by indexing it or using an automated search tool. (#39-1 at 2.) Defendant concedes that a search within the BIA Shared Drive using File Explorer is technically possible. (#33-1 ¶ 6.) However, the BIA Shared Drive is "on a server which is built on [CIFS] technology" which is "not designed or set up to function as a document management system, and does not support indexing shared network locations." *Id.* Thus, there is no master index hosted by the CIFS server that could be searched for a keyword. *Id.* Plaintiff acknowledges that "indexing is not supported by CIFS *per se*," but claims that a CIFS server *could* be configured to retrieve files indexed by another mechanism. (#39-1 at 3.) Although not directly familiar with the EOIR's

systems and settings, he estimates that indexing the BIA Shared Drive would take several days. *Id.* at 9.

Search index capabilities for file users with access to the BIA Shared Drive—as opposed to the index capabilities of the CIFS server where it is stored—are controlled by "group policy settings" set by OIT. (#33-1 ¶ 7.) Among other reasons, OIT creates these settings "to ensure the security and safety of the computer systems [it] control[s] and administer[s] to prevent users from being able to change settings within Microsoft Windows that may put the computers or EOIR network at increased risk or vulnerability." *Id.* Group policy settings for file users on the EOIR network "will only index the local drives of each computer" as opposed to files stored on the BIA Shared Drive, "and only for key terms matching file names within the folder(s) and/or sub-folder(s) being searched." *Id.* ¶¶ 7, 8. File names do not include keywords relevant to file contents, but instead include the relevant A-number, non-citizen name, and/or drafter's initials. *Id.* ¶ 8. In short, the group policy settings only allow file users to index local file properties, not the file contents of the BIA Shared Drive. *Id.*

Because the CIFS server does not have a master index, changing the group policy settings to allow file user indexing of the BIA Shared Drive by file contents would cause each computer to scan each file every time it was accessed to determine whether any files had been modified. (#33-1 ¶¶ 6, 9.) The number of file users with access to the BIA Shared Drive and amount of data stored would compound, causing performance issues. *Id.* ¶ 9. Further, defendant argues that even if group policy settings were changed to allow indexing of file contents, "the settings would revert to their originally specified parameters at an unknown time, potentially even in the midst of a search, which would skew the search results." (#26 ¶ 14 n.9.) Group policy settings are reapplied to EOIR computers automatically several times throughout the day for security purposes. (#33-1 ¶¶ 7, 10.)

7

If a file user were conducting a search on the BIA Shared Drive and the standard group policy settings were automatically reapplied, the search would be interrupted, making it incomplete. *Id.* ¶ 10. Defendant maintains that allowing file user indexing alongside standard usage would render the BIA Shared Drive unusable. *Id.* ¶ 9.[7]

Defendant notes several other challenges related to indexing the BIA Shared Drive. (#33-1 ¶ 9.) It states that, according to Microsoft, no more than one million items can be indexed at a time, but the BIA Shared Drive contains three times this number of files. *Id.* Furthermore, defendant estimates that if an index of the BIA Shared Drive were built, it would constitute a file of at least 250 gigabytes. *Id.* Defendant contends that opening and accessing such a large index would take a significant amount of time. *Id.* Overall, defendant represents that "the BIA Shared [D]rive is effectively unindexable by the Windows File Explorer search function, and any attempt to index the BIA [Shared] Drive has an extremely low chance of success." *Id.* ¶ 9.[8]

On August 9, 2021, the BIA began using a new case management application called Judicial Tools. (#26 ¶ 15.) The software is used to draft decisions and is integrated with Microsoft Word. *Id.* As currently configured, drafts are saved directly to Judicial Tools and, within that

---

[7] Plaintiff notes that defendant appears to be describing the process by which a file user would index the shared drive on their own computer, versus having OIT set up a dedicated computer or the server to perform the indexing. (#39-1 at 8, 11-12.) He acknowledges that even using the server or a dedicated computer would require indexing "during off-peak times such as overnight, weekend, holiday, etc." *Id.* at 11. In addition, he acknowledges that this alternative approach would require OIT to create a new group policy setting to permit indexing. *Id.* at 11-12.

[8] Plaintiff suggests alternatives to indexing in the ways defendant describes, including purchasing an external hard drive to store the index, purchasing e-discovery services to store the index and associated files, using multiple servers, or separating the files into three discrete units of data to make indexing more manageable. (#39-1 at 9-10.) The court addresses these suggestions in Section IV.

application, are only searchable by A-number.[9] *Id.* Some drafts stored on the BIA Shared Drive have been transferred to Judicial Tools. *Id.*

As of 2022, the FOIA Unit has access to FOIA Xpress and its Electronic Document Review ("EDR") tool, which allows files to be uploaded and searched. (#33-1 ¶ 14.) Defendant states that to perform a search of BIA Shared Drive files on the EDR server, all of those files would have to be copied and uploaded to a temporary storage location simultaneously, causing performance consequences to BIA Shared Drive users and the EOIR Network. *Id.* Furthermore, the EDR server requires all documents exceeding ten gigabytes be uploaded directly, which requires making a special request to OIT and identifying the relevant files. *Id.* Defendant claims that given the number and size of files, using EDR to search the BIA Shared Drive's files would run the risk of "system instability or crashes." *Id.* Defendant also notes that to maintain a searchable database of BIA Shared Drive files in EDR for future requests, the files "would need to be re-uploaded and re-indexed on a regular basis." *Id.*

On October 1, 2021, plaintiff submitted FOIA Request 2022-00208, which was designated as "Complex." (#26 ¶¶ 18-19.) The request read:

> Please search the BIA's DATA LIBRARY of "shared network folders" that contain native (Word) electronic versions of BIA decisions for: All Board of Immigration Appeals (BIA) decisions that: date from December 1, 2019 through present; and originate from Boston, MA or Hartford, CT immigration courts; and contain the text "alternatives to detention" or "alternatives-to-detention." Again, this request is for a search in the BIA's "data library" not its "BIA Decisions [Search Application]" or "BIA eDecisions" databases where word searches are unreliable because of OCR and other errors. I understand this request may capture draft decisions as well as unsigned final decisions.

---

[9] Plaintiff disputes the searchability of Judicial Tools, arguing that it can be searched by keyword. (#29 at 9.) However, plaintiff's assertion relies on a fact sheet from the Judicial Tools website which, among other things, recites a "fast, flexible search function" as a feature of the software without referencing keyword searchability. (#29-1 at 3, 6.)

(#26-2 at 4.)

On October 5, 2021, the attorney assigned to review FOIA Request 2022-00208 mistakenly deemed it duplicative of the request plaintiff previously submitted and litigated in *Hawkinson I*, FOIA Request 2021-0270. (#26 ¶ 20; #29 at 9-10.) The attorney therefore responded to plaintiff by explaining that the request would be closed. (#26 ¶ 20.) That same day, plaintiff emailed the FOIA Public Liaison and submitted a message to the FOIA Unit through the Public Access Link portal, noting that his request was not duplicative because it identified a "particular location to search for BIA decisions, a location that was not searched in [FOIA Request] 2021-02706" and that the requested timeframe for the two searches was different. *Id.* ¶ 21. The next day, the assigned attorney replied, explaining that "there is no precedent or authority permitting a requester to direct an agency where to search for records" and that the court (in *Hawkinson I*) had determined that the search conducted in response to plaintiff's earlier request was reasonable. *Id.* ¶ 22.

On October 8, 2021, Hawkinson filed an appeal with OIP. (#26 ¶ 23.) Upon further review of FOIA Request 2022-00208, defendant determined that the timeframe of the search was not, in fact, duplicative of FOIA Request 2021-02706. *Id.* ¶ 24. As noted earlier, when defendant receives an untargeted request like plaintiff's, the FOIA Unit conducts the search because it has access to the two BIA databases described above, one of which—BIA Decisions Search Application— allows for keyword searching. *Id.* ¶ 16. The assigned attorney concluded that the BIA Decisions Search Application was the only location "reasonably likely to contain responsive records" and on November 18, 2021, they conducted a search that yielded one responsive decision. *Id.* ¶ 25. Plaintiff disputes that the BIA Decisions Search Application was the only location reasonably likely to contain responsive records. (#29 at 10.) On November 19, 2021, plaintiff was granted

partial access to the responsive decision. (#26 ¶ 26.) On December 29, 2021, OIP closed plaintiff's

appeal because it had learned that plaintiff filed his complaint in this matter. *Id.* ¶ 27.

### III. <u>Legal Standard</u>.

"FOIA cases are typically decided on motions for summary judgment." *Am. C.L. Union of*

*Mass., Inc.*, 448 F. Supp. 3d at 35-36 (quoting *Am. C.L. Union Found., Inc. v. U.S. Dep't of Educ.*,

320 F. Supp. 3d 270, 276 (D. Mass. 2018)). The moving party bears the initial burden of asserting

the absence of a genuine issue of material fact and "support[ing] that assertion by affidavits,

admissions, or other materials of evidentiary quality." *Mulvihill v. Top-Flite Golf Co.*, 335 F.3d

15, 19 (1st Cir. 2003). A genuine issue of fact exists where a fact finder could find in favor of the

non-moving party, "while material facts are those whose existence or nonexistence has the

potential to change the outcome of the suit." *Green Mountain Realty Corp. v. Leonard*, 750 F.3d

30, 38 (1st Cir. 2014) (internal quotations marks and citation omitted).

To summarize, in the FOIA context,

> [s]ummary judgment is warranted to an agency . . . "when the agency proves that it
> has fully discharged its obligations under the FOIA after the underlying facts and
> the inferences to be drawn from them are construed in the light most favorable to
> the FOIA requester." An agency discharges its burden when it "proves that each
> document that falls within the class requested either has been produced, is
> unidentifiable, or is wholly exempt from the FOIA's inspection requirements."
> Summary judgment in FOIA cases "may be granted solely on the basis of agency
> affidavits."

*Mullane v. U.S. Dep't of Just.*, No. 19-cv-12379-DJC, 2021 WL 1080249, at *2-3 (D. Mass. Mar.

19, 2021) (quoting *Crooker v. Tax Div. of U.S. Dep't of Just.*, No. 94-cv-30129, 1995 WL 783236,

at *7, 10 (D. Mass. Nov. 17, 1995)); *see Am. C.L. Union of Mass., Inc.*, 448 F. Supp. 3d at 42–43.

### IV. <u>Discussion</u>.

Plaintiff contends that defendant's search was inadequate because it failed to search the

BIA Shared Drive. (#29 at 1.) He further argues that defendant neither justified its decision not to

search the BIA Shared Drive, nor sufficiently explained the purported burden of searching it. *Id.*
Defendant's position is that it conducted an adequate search and that its declarations explain why
it did not follow plaintiff's search instructions. (#25 at 3, 8-11.)

A. <u>Legal Standard for Sufficiency of FOIA Responses.</u>

In the context of summary judgment in a FOIA suit, "the burden rests with the agency
subject to a FOIA request to establish that it has 'made a good faith effort to conduct a search for
the requested records, using methods which can be reasonably expected to produce the information
requested.'" *Oleskey*, 658 F. Supp. 2d at 294 (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57,
68 (D.C. Cir. 1990)). The agency can make "[t]his showing . . . by affidavits, 'provided they are
relatively detailed and nonconclusory, and are submitted by responsible agency officials in good
faith.'" *Stalcup v. U.S. Dep't of Def.*, No. 13-cv-11967-LTS, 2015 WL 5545059, at *3 (D. Mass.
Sept. 18, 2015) (quoting *Maynard v. C.I.A.*, 986 F.2d 547, 559 (1st Cir. 1993)).

"A satisfactory agency affidavit should, at a minimum, describe in reasonable detail the
scope and method by which the search was conducted. . . . [and] should additionally 'describe at
least generally the structure of the agency's file system which makes further search difficult.'"
*Maynard*, 986 F.2d at 559-60 (quoting *Church of Scientology of Cal. v. I.R.S.*, 792 F.2d 146, 151
(D.C. Cir. 1986)). Furthermore, an affidavit may include details "setting forth the search terms and
the type of search performed, and averring that all files likely to contain responsive materials . . .
were searched." *Oleskey*, 658 F. Supp. 2d at 294 (alteration in original) (quoting *Iturralde v.
Comptroller of Currency*, 315 F.3d 311, 313-14 (D.C. Cir. 2003)). If the agency is able to make a
sufficient showing, then "a rebuttable presumption that the agency acted in good faith emerges."
*Stalcup v. C.I.A.*, 768 F.3d 65, 74 (1st Cir. 2014). "A requester can rebut that presumption and

avoid summary judgment only 'by showing that the agency's search was not made in good faith.'" *Am. C.L. Union of Mass., Inc*., 448 F. Supp. 3d at 42 (quoting *Maynard*, 986 F.2d at 560).

This inquiry concentrates on the search itself, not the results of the search. *Oleskey*, 658 F. Supp. 2d at 298; *see Hornbostel v. U.S. Dep't of the Interior*, 305 F. Supp. 2d 21, 28 (D.D.C. 2003) (stating that "the focus of the adequacy inquiry is not on the results"). "Even if a plaintiff is correct that additional responsive records exist, an agency's failure to locate them 'does not *ipso facto* render its search inadequate.'" *Mullane*, 2021 WL 1080249, at *3 (quoting *Oleskey*, 658 F. Supp. 2d at 298).

### B.  Whether EOIR Has Established a Presumption of Good Faith.

Defendant submitted the affidavits of Joseph R. Schaff and Bradford Jelinski in support of its motion for summary judgment.

Schaff is a Supervisor Attorney Advisor for defendant's FOIA program. (#26-1 ¶ 1.)[10]  His declaration begins by describing the EOIR FOIA program in detail. *Id.* ¶¶ 4-13. Next, Schaff explains which databases had the potential to contain documents responsive to plaintiff's requested search. *Id.* ¶¶ 14-18. Schaff's declaration references four databases or locations that could contain responsive documents: BIA eDecisions, BIA Decisions Search Application, the BIA Shared Drive, and Judicial Tools. *Id.* ¶¶ 14, 15, 17, 18. Schaff describes each of these and explains why the BIA Decisions Search Application was used to complete plaintiff's request despite plaintiff's instructions to search the BIA Shared Drive. *Id.*; *see Maynard*, 986 F.2d at 559-60 (stating that an affidavit may describe file systems generally). Schaff also notes that the search in BIA Decisions

---

[10] Defendant is not required to submit an affidavit of an employee with direct knowledge of its computer system. *Duggan v. U.S. Dep't of Jus.*, No. 02-1577, 2002 U.S. App. LEXIS 27232, at *1 (1st Cir. Dec. 31, 2002) (per curiam) ("[T]he government is not always required to produce affidavits on personal knowledge, but may rely upon the statements of responsible officials.").

Search Application returned a responsive document that EOIR provided to plaintiff. (#26-1 ¶¶ 28-29.)

In response to plaintiff's contention that Schaff has no "actual or direct knowledge" of the BIA Shared Drive, defendant submitted a supplemental declaration from Jelinski, who is one of the OIT's Senior Systems Engineers. (#29 at 2; #33-1.) In his eleven-page declaration, Jelinski describes—in even greater detail than Schaff—how the BIA Shared Drive works and why it cannot be searched using keywords. (#33-1.) He explains why OIT has certain settings in place that make indexing the BIA Shared Drive or using e-Discovery software like EDR to allow for keyword searching unworkable. *See generally id.* He also states that Judicial Tools cannot be searched by keyword. *Id.* ¶ 11.

An agency need only search databases where responsive documents are likely to be found. *Oglesby*, 920 F.2d at 68. According to the declarations, the BIA Decisions Search Application is the only database where documents responsive to the search parameters plaintiff provided could be found via a key term search. (#33-1 ¶¶ 12-13; #26-1 ¶ 28.) Although it is true that an "agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested," *Oglesby*, 920 F.2d at 68, Schaff and Jelinski clearly explain why the BIA Decisions Search Application was the best source to find responsive documents and why the BIA Shared Drive was not. (#26-1 ¶¶ 16-17; #33-1 ¶¶ 3-14); *see Oglesby*, 920 F.2d at 68 (requiring an agency to explain why it did or did not search potentially responsive places); *Maynard*, 986 F.2d at 559-60 (noting that an agency affidavit should explain why its file system makes additional searches difficult). By detailing the databases reasonably likely to contain responsive information and its reasons for searching the BIA Decisions Search Application instead of the BIA Shared

Drive, the "declaration[s] provided a reasonable explanation for the agency's process," creating a presumption that defendant acted in good faith. *Stalcup*, 768 F.3d at 74.

C.   Plaintiff's Contentions in Rebuttal.

Plaintiff attempts to rebut the presumption of good faith by arguing that defendant's declarations were misleading, inaccurate, and conclusory. (#39 at 9.) He details his disputes with the Schaff and Jelinski declarations in his own supplemental declarations. (##29-1, 39-1.) Essentially, plaintiff argues that, by failing to follow the instructions in his FOIA request, defendant did not conduct its search in good faith. Plaintiff proposes several methods defendant could have used to perform his requested search. (#39-1.) His detailed suggestions include indexing the BIA Shared Drive, *id.* at 3-4; copying the Drive's contents onto a spare hard drive, then using e-discovery software to index and search the copy, *id.* at 14; or conducting a keyword search in Judicial Tools, *id.* at 13. Defendant's position is that a FOIA requester cannot specify the files or databases where an agency should search for responsive materials. (#25 at 8 n.8).

An agency cannot ignore a FOIA requester's directions to search a specific database provided that the requester has a basis to believe it will contain responsive documents. *Mobley v. CIA*, 806 F.3d 568, 582 (D.C. Cir. 2015). Yet there is no obligation to follow each and every instruction a requester provides. *McClanahan v. U.S. Dep't of Jus.*, 204 F. Supp. 3d 30, 43-44 (D.D.C. 2016); *see Mobley*, 806 F.3d at 582 (stating that, "under [plaintiff's] approach, which would allow a requester to dictate, through search instructions, the scope of an agency's search, the reasonableness test for search adequacy long adhered to in this circuit would be undermined").

> Thus, the reasonableness of a search is not measured against the scope dictated by a requester's search instructions, particularly when those instruction do not provide "clear and certain" "lead[s]." Rather, "a search is generally adequate where the agency has sufficiently explained its search process and why the specified record systems are not reasonably likely to contain responsive records."

*McClanahan*, 204 F. Supp. 3d at 44 (alteration in original) (citations omitted) (quoting *Mobley* 806 F.3d at 582).

## 1.  Indexing the BIA Shared Drive.

Government agencies are under no obligation to maintain their documents in a particular way. *Oleskey*, 658 F. Supp. 2d at 297. Nor are they required to create new records or files in response to a FOIA request. *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 152 (1980); *Johnson v. CIA*, 330 F. Supp. 3d 628, 642 (D. Mass. 2018); *Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233, 270 (D.D.C. 2012). In *National Security Counselors*, the court explained that

> an agency need not create a new database or a reorganize its method of archiving data, but if the agency already stores records in an electronic database, searching that database does not involve the creation of a new record. Likewise, sorting a pre-existing database of information to make information intelligible does not involve the creation of a new record because, as Congress noted in the legislative history to the E-FOIA Amendments, "[c]omputer records found in a database rather than a file cabinet may require the application of codes or some form of programming to retrieve the information." Sorting a database by a particular data field (e.g., date, category, title) is essentially "the application of codes or some form of programming," and thus does not involve creating new records or conducting research—it is just another form of searching that is within the scope of an agency's duties in responding to FOIA requests.

898 F. Supp. 2d at 270 (citations omitted) (quoting H.R. Rep. No. 104-795, at 22 (1996), *as reprinted in* 1996 U.S.C.C.A.N. 3448, 3465).[11]

Plaintiff asks defendant to create an index rather than merely sort data, a task that he concedes could take anywhere from several hours to several days on a dedicated computer. (#39-

---

[11] Defendant cites *Church of Scientology of California v. IRS*, in support of the proposition that "an agency is not required to reorganize its files." (#33 at 5 (quoting 792 F.2d 146, 150-151 (D.C. Cir. 1986)).) In that case, the court considered whether an agency was obligated to reorganize paper files, whereas this case concerns electronic files, which can often be sorted in a matter of seconds. *See* 792 F.2d at 150-51. Here, however, plaintiff requests more than simply sorting electronic files.

1 at 9, 14.) Plaintiff further suggests that in order to reduce disruption to the BIA's network, defendant could "execute [the] search or indexing operation directly on the machine to which the hard drive [hosting the BIA Shared Drive] is connected." *Id.* at 4. However, such an operation goes far beyond simply sorting files by properties such as date or title. *See id.* at 3-12; #33-1 ¶¶ 3-10. Indexing would require a computer to log every single word in millions of documents, creating a new and separate file. *See* #33-1 ¶ 6; #39-1 at 8.

Courts have repeatedly found that agencies are excused from creating files or database indices for FOIA requesters. *See Nat'l Sec. Counselors*, 898 F. Supp. 2d at 271 (stating that "a particular listing or index of the contents of a database would not necessarily have existed prior to a given FOIA request" and therefore would not be a file or document subject to FOIA disclosure because it is not something the agency keeps in the regular course of its business); *Johnson*, 330 F. Supp. 3d at 643 (stating that "an agency is not compelled to create a new list for a requester"); *see also Kissinger*, 445 U.S. at 152 ("The Act does not obligate agencies to create or retain documents; it only obligates them to provide access to those which it in fact has created and retained."). Defendant was therefore not obligated to create a new index file in order to search the BIA Shared Drive by keyword as plaintiff requested. *See Nat'l Sec, Counselors*, 898 F. Supp. 2d at 271-272.

### 2. Using E-Discovery Software to Conduct a Search.

Plaintiff acknowledges that he has "no experience with the recent addition of 'FOIA Xpress EDR,'" BIA's internal e-discovery software. (#39-1 at 13.) He suggests purchasing an external hard drive, copying the BIA Shared Drive onto that external hard drive, then sending it to an e-discovery vendor. *Id.* at 14. Although plaintiff states that an external hard drive is inexpensive to

purchase, he does not provide an estimate of the cost of having an external vendor upload, index, and store the 3.4 million files contained on the BIA Shared Drive. *See generally id.*

Setting aside the difficulties of copying the BIA Shared Drive's large quantity of files as Jelinski described in his declaration, doing so, by very definition, would require defendant to create a new file, which—as discussed above—agencies are not required to do in order to comply with FOIA. *See Nat'l Sec. Counselors*, 898 F. Supp. 2d at 271.

### 3.   Searching Judicial Tools by Keyword.

Plaintiff claims that Judicial Tools can be searched by keyword. (#39-1 at 13.) However, the Judicial Tools fact sheet that plaintiff cites does not reference a keyword search function. *See* #29-1 at 6. According to Jelinski, whose department administers the application for BIA, Judicial Tools cannot be searched by keyword. (#33-1 ¶ 11.) Plaintiff's conjecture that defendant is incorrect about Judicial Tools cannot overcome the presumption of good faith given Jelinski's role and experience with BIA's use of the application. *See McClanahan*, 204 F. Supp. 3d at 44 (granting defendant's motion for summary judgment because plaintiff "offered no basis on which [the] court could conclude the presumption of good faith has been overcome." (quoting *Mobley*, 806 F.3d at 582)).

### D. Summary.

Plaintiff lacks direct knowledge of defendant's computer systems. *See* #39-1 at 1 (explaining plaintiff's qualifications and expertise). This is in contrast to Jelinski, who is a Senior Systems Engineer for OIT and is directly familiar with defendant's computer systems and the reasons for the settings about which plaintiff complains. (##26-1, 33-1.) Those reasons include system security and efficiency. (#33-1 ¶ 7.) Plaintiff's assertions that defendant acted in bad faith by deciding not to make system modifications or create new files in order to conduct a keyword

search of the BIA Shared Drive's files or Judicial Tools is insufficient to overcome the presumption of good faith. *See Duggan v. S.E.C.*, 277 F. App'x 16, 16-17 (1st Cir. 2008) (per curiam) ("The [agency] made an adequate showing at summary judgment that it had conducted a search that was reasonably calculated to disclose requested documents. [Plaintiff] could not rely upon . . . speculation to overcome that showing."); *McClanahan*, 204 F. Supp. 3d at 44. Even when drawing all reasonable inferences in plaintiff's favor, defendant's decision not to follow the directions set forth in plaintiff's FOIA request, for the reasons provided, does not support a finding of bad faith. Thus, defendant has complied with its obligations under FOIA.

## V. Conclusion.

For the reasons discussed herein, defendant's motion to for summary judgment (#24) is ALLOWED.[12]

August 10, 2023

/s/ M. PAGE KELLEY
M. Page Kelley
United States Magistrate Judge

---

[12] Plaintiff argues that because he requested drafts, searching the BIA Decisions Search Application did not adequately respond to his request because that database does not contain drafts. (#29 at 2.) It is not clear from plaintiff's FOIA request that he only wanted draft decisions. (#26-2 at 4.) In any case, as discussed above, defendant is under no obligation to search the BIA Shared Drive or Judicial Tools due to the nature of plaintiff's keyword request, the applications and systems in question, and OIT's system settings. Because plaintiff is not entitled to a search of the BIA Shared Drive or Judicial Tools for the reasons discussed above, the court does not separately consider whether plaintiff is entitled to draft opinions, which are stored on those systems.